(C. D. 1564)

NATIONAL ACADEMY OF DESIGN *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 3, 1953)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh* and *Richard M. Kozinn*, special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: There was imported into the United States from France merchandise described as "1000 Triangular rosettes (metal), 1000 Sliding blue triangles (metal), 50 Meters of ribbon." The rosettes and sliding triangles were classified by the collector of customs within the provisions of paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), reading as follows:

> Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; * * *

The ribbon was classified pursuant to the provisions of paragraph 1207 of said act (19 U. S. C. § 1001, par. 1207), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as follows:

> Fabrics, with fast edges, not exceeding twelve inches in width, and articles made therefrom; tubings, cords, tassels, and cords and tassels; all the foregoing wholly or in chief value of silk or of silk and india rubber, and not specially provided for, whether or not Jacquard-figured_____ 25% ad val.

The only claim made by plaintiff is that the rosettes, sliding triangles, and ribbon, being used exclusively as regalia, are entitled to entry free of duty within the terms of paragraph 1773 of said act (19 U. S. C. § 1201, par. 1773), which cover, *inter alia*—

> * * * regalia and gems, where specially imported in good faith for the use and by order of any society incorporated or established solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts, or for the use and by order of any college, academy, school, seminary of learning, orphan asylum, or public hospital in the United States, or any State or public library, and not for sale, subject to such regulations as the Secretary of the Treasury shall prescribe; but the term "regalia" as herein used shall be held to embrace only such insignia of rank or office or emblems as may be worn upon the person or borne in the hand during public exercises of the society or institution, and shall not include articles of furniture or fixtures, or of regular wearing apparel, nor personal property of individuals.

At the trial of this case, four exhibits, offered on behalf of plaintiff, were received in evidence; the director of the National Academy of Design (plaintiff herein) appeared and testified; and counsel for the parties entered into an oral stipulation to the effect "that the National Academy of Design is a society incorporated and established solely for the encouragement of fine arts, or school, or seminary of learning."

Plaintiff's exhibit 3 was received in evidence as a sample of the merchandise described on the invoice as "Triangular rosettes, metal,"

and plaintiff's exhibit 4 was received to illustrate the item described as "Sliding blue triangles, metal." Said exhibit 4 had inserted in the metal triangle a length of red ribbon, approximately 3¼ inches, which ribbon, according to the record before us, was imported in continuous rolls with no lines of demarcation as to where it was to be cut. Other exhibits offered on behalf of plaintiff will be referred to *infra*.

Vernon C. Porter, director of the National Academy of Design, who appeared on behalf of plaintiff, testified in substance as follows: According to the articles of incorporation of the Academy, its purpose is the exhibition and advancement of the fine arts, which includes architecture and instruction in the arts. The headquarters of the National Academy of Design are located in New York City, and there are no branches connected with it. As director of and under the guidance of a council of 14 members, Porter arranges for the exhibitions, manages office details, and supervises the school operated in connection with the Academy. The total general membership is limited to 500 and consists of painters, sculptors, and men in the graphic arts and in architecture. Honorary memberships are bestowed on men who reside outside the United States for distinguished work in the field of art. The 500 persons who comprise the general membership are divided equally between classes designated as associates and academicians, an academician who is of higher rank being one who has contributed something to the world of art.

The witness, who was familiar with the merchandise in controversy, explained the uses thereof. As to exhibit 3, he stated—

When a man has been elected an academician he receives a diploma with his name on it and at the same time a rosette and the letter stating that he has been appointed or elected an academician of the National Academy of Design. This is your diploma which you may frame and hang in your office and this is the button which you may wear in your buttonhole at public functions and private functions and that goes out with a card which states it is the property of the Academy and it is so designated in our book and we have a receipt for each button sent to each academician.

With reference to exhibit 4, the witness described its use as follows:

It is identical [to exhibit 3] except in the designation that they have been elected an associate of the National Academy of Design and the same procedure is followed and the man receives a diploma with his name on it and it so designates that he is an associate together with a ribbon to be worn for his buttonhole at public functions of the Academy. We also receive a receipt from him at the time we mail him the designating small triangular and a receipt for the diploma so that we know it has gone through.

Exhibits 3 and 4 have never been sold to members of the National Academy of Design but remain the property of the society.

Upon being queried about the different types of exercises conducted by the National Academy of Design at which the insignia would be

worn, the witness referred to from 6 to 10 public functions and 2 private functions during the course of a year. Functions designated as "public" would be exhibitions at which the council and other members would act as hosts or hostesses. On these occasions, speeches are made, reports read, and prizes awarded. Also, at the close of each term of the school operated by the Academy, there is a public function where the students and their relatives and friends are present, at which time prizes and scholarships are awarded, and members of the Academy are in charge. As "private" functions, a general meeting and an annual meeting are held each year for the nomination and election of officers, a consideration of new members, and the transaction of routine business in connection with the operation of the Academy and its activities. Members of the Academy are requested to wear the insignia represented by plaintiff's exhibits 3 and 4 at public functions, but it is not a violation of the purposes or desires of the Academy if the insignia were worn in private. In fact, although he had never seen it done, the witness was quite certain that the insignia could be worn on the street. As a rule, at all public exercises, the members on entering the Academy building place the insignia in their buttonholes and, when leaving the building, remove them. Porter admitted, however, that at the general and annual meetings of the society, which are definitely private functions and limited to members only, the insignia are also worn.

Plaintiff's exhibits 1 and 2 are sworn letters written on the stationery of the National Academy of Design and signed by its president, Lawrence G. White, dated October 24, 1951, addressed to the Commissioner of Customs, Washington, D. C., and January 29, 1951, addressed to the collector of customs at New York, respectively. The matter contained in these communications is merely repetitious of the primary evidence contained in the testimonial record. Because of its relevance to the conclusion herein reached, we quote an excerpt from exhibit 1, which is repeated practically verbatim in plaintiff's exhibit 2—

The regalia is worn upon the person by the members of the National Academy as a badge or emblem of rank and distinction at all public and private exercises, assemblies and meetings of the Society.

The question for the court to decide is whether, upon the record presented and as above summarized, the plaintiff has proved to the satisfaction of the court that the merchandise in controversy comes within the provision for "regalia" in paragraph 1773 of the tariff act.

In the tariff sense, the elements necessary to bring an article within the free entry provision of said paragraph are—

1. Regalia and gems.
2. Specially imported in good faith for the use and by order of any society incorporated or established solely for religious, philo-

sophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts, or for the use and by order of any college, academy, school, seminary of learning, orphan asylum, or public hospital in the United States or any State or public library.

3. Not for sale.

4. Subject to such regulations as the Secretary of the Treasury shall prescribe.

5 (a). The term "regalia," as herein used, shall be held to embrace only such insignia of rank or office or emblems as may be worn upon the person or borne in the hand during public exercises of the society or institution.

5 (b). Shall not include articles of furniture or fixtures, or of regular wearing apparel, nor personal property of individuals.

Contained in the record in this case is customs Form 3321, "Declaration of Free Entry for Colleges, Religious Institutions, etc.," required by section 10.43 of the Customs Regulations of 1943, as amended. It therefore appears that the requirements of the Secretary of the Treasury have been fulfilled.

From the record before us, it is evident that the elements necessary to gain free entry of merchandise as regalia within the provisions of paragraph 1773, *supra,* have been complied with except the requirement that the term "regalia" shall be held to embrace "only such insignia of rank or office * * * as may be worn upon the person * * * during *public* exercises * * *." [Italics supplied.]

From the testimony of plaintiff's witness Porter, there is clear evidence that the insignia in issue are worn not only at the public functions of the society but at the private functions as well, a fact which finds corroboration in plaintiff's exhibits 1 and 2. There is evidence as well that the insignia might even be worn on the street without violating the rules of the society.

The case of *Sisters of St. Francis Assisi* v. *United States,* 53 Treas. Dec. 909, Abstract 5342, would appear to be controlling of the issue here presented. That case involved the proper classification for duty purposes of certain sterling silver brooches or emblems depicting the Sacred Heart of Jesus. It was disclosed by the record that the brooches or emblems were attached to the garb of members of a religious order known as the Sisters of St. Francis Assisi, the garb taking the place of ordinary wearing apparel and used at all times when wearing apparel is customarily worn. It further appeared that the use of the brooches or emblems was not confined or limited to public religious exercises. As in the case before us, it was there contended that the brooches, being insignia or the sign of rank of the perpetually professed sisters, were such articles as would be encompassed by the provision for regalia in paragraph 1673 of the Tariff Act of 1922 (the language of which provision is identical with that here being considered). The court there held that the brooches were

not insignia of rank or emblems peculiar to public religious exercises and, therefore, did not come within the provisions for "regalia" in the applicable tariff act.

Plaintiff herein endeavors to distinguish the facts in the present case from those in the case of the *Sisters of St. Francis Assisi, supra,* on the grounds that the mere use of the insignia at the two yearly private functions of the National Academy of Design "does not make these rosettes and triangles regular wearing apparel so as to be excluded from the statutory definition of insignia."

Whatever value there is contained in this argument presented by plaintiff's counsel is negatived by the uncontradicted fact that the rosettes and triangles are worn at private as well as public functions of the National Academy of Design, whereas the benefit of free entry of such items is limited by the statutory language of paragraph 1773, *supra,* to such regalia as are worn upon the person during "public" exercises of a society or institution of the kind named.

It might here be pointed out that in the present case, as well as in the case of the *Sisters of St. Francis Assisi,* the question involved is not whether the importations were "regular wearing apparel so as to be excluded from the statutory definition of insignia," but rather whether the importations consisted of "such insignia of rank or office or emblems as may be worn upon the person or borne in the hand during public exercises of the society or institution."

Other cases cited by plaintiff in its brief have been considered, but there is nothing therein contained which is contra to the conclusion herein reached.

When this court in *Hawley & Letzerich* v. *United States,* 65 Treas. Dec. 1461, Abstract 27731, was presented with the issue of whether certain uniforms of the Order of the Knights of St. Gregory the Great, an ecclesiastical order of the Roman Catholic Church, should receive the benefit of free entry as coming within the definition of "regalia" in paragraph 1773, *supra,* as claimed by plaintiff, or were properly classified by the collector of customs as coming within the provisions of paragraph 1529 of said act, the court, in sustaining the plaintiff's claim, found that all of the requirements laid down in the definition of "regalia," as set forth, *supra,* were met, and included the finding that "The members of the church, upon whom the distinction of the order is bestowed, wear the uniforms at certain ecclesiastical *public functions only.*" [Italics supplied.]

After a full consideration of the record before us and the cases cited by the parties hereto, we are of the opinion, and so hold, that the merchandise in controversy is not regalia within the provisions of paragraph 1773, *supra,* as claimed by plaintiff, and that it was properly classified by the collector of customs. The claim of plaintiff is therefore overruled.

Judgment will be entered accordingly.